Now to Appeal 23-2874, Maria Smith v. Garland. We'll begin with oral argument, Mr. Mwangi for the appellant. And Mrs. Smith appeals the District Court's grant of a 12B6 motion by the appellees and she disagrees with the District Court for three reasons opposite what the District that she sued for. There is an interesting part of the timeline in this case which I'd like to expound on a little bit because it kind of throws some light on what might have happened here. The Smiths married December 12, 2012. On May 23, 2013, Mrs. Smith filed the I-130 for Mrs. Smith. On August 15 that year, there was a joint interview, Mr. Smith, Mrs. Smith at USCIS. Then on January 21, Mrs. Smith's ex-husband, Mr. Hernandez Rico, filed a petition for his son whom he shares with Mrs. Smith. That's in January 21, 2014. On February 6, 2014, Mr. Smith died. On June 6, 2014, a USCIS investigator went to the address where Mr. Hernandez Rico and his son were living, not the address where Mrs. Smith was living which is 500 Lewis Street, Burlington, Wisconsin. The address to which the investigator went is 5101 North Lovers Lane Road, Milwaukee. I think the reason that is is usually USCIS investigators, if you give an address as the marital address, they will go there first, usually. The reason the investigator probably goes to not the address where Mrs. Smith and Mr. Smith lived, but the address where Mr. Hernandez Rico and his son live is because of the petition he filed, and the reason I believe that is true is because if you look at the Notice of Intent to Deny on page 46 of our appendix, it talks about Mr. Hernandez Rico coming into the U.S., marrying a U.S. citizen who petitions for him. That is denied. He marries another U.S. citizen who petitions for him. Apparently that succeeds because that's how he's able to petition for his son. So why is that important? It's important because USCIS took what appears to be four different records and merged them. The first one is Mrs. Smith's, obviously. The second belongs to the petition filed by Mr. Hernandez Rico's first U.S. citizen spouse. The third record belongs to the spouse Mr. Hernandez Rico married, his third wife, who's a U.S. citizen, and the fourth is the son's. Now, it is easy to assume that the reason the agency finds a lack of credibility in Mrs. Smith, apart from her saying no when asked, have you traveled together with him after you got divorced, and they're saying that you lack credibility, he lacks credibility, is probably because they find he lacks credibility, therefore she lacks credibility. Because apparently, if my theory is correct, they go investigating him, and then the investigator writes in the report that there were three names on the mailbox, you know, Mr. Hernandez Rico's, the son's, and Mrs. Smith's, and the investigator gets a lease copy from the agent, and it's signed by all three. Mr. Mwangi, could I ask you a procedural question here? Yes, should it have held a trial? Should it have held a trial? That's my question. I believe so, your It would be very unusual under the Administrative Procedure Act. Well, your honor, because it would be unusual, but when I say trial, maybe I mean a hearing on the merits. Well, I mean hearing evidence and deciding Mrs. Smith's credibility, right? That is correct, Judge. That's what you wanted. But that might have happened if this had gone forward to discovery, because if an answer is filed, usually in these cases, then the agency files a complete certified administrative record. And the issue here is that these two people lack credibility because there's an allegation that on May 13, 2002, they arrived together at Atlanta at Hartsfield-Jackson International Airport. They're confronted by immigration officials who detain them and question them. Then they are allowed to withdraw their applications for admission, they get on a flight, they leave the country. However, the problem that I have with that is this, because there's a lot has been said, you know, you give them a summary, that's enough. You don't have to the notice of intent to deny has a simple sentence that states, you presented yourselves to immigration officers as a married couple. She rebuts that, says we did not. Okay. She even goes to the point of seeking by FOIA that record, which has never turned up. But the decision after her rebuttal then says, not only did you present yourself as a married couple, but he actually engaged in a sworn statement with immigration officers in which he referred to you as his wife. Now, a summary should be complete. It should represent what you have. If you insist, all I have to do is give you a summary. In this case, there's, you presented yourselves as a married couple. And then after she's rebutted, now she's given the other piece, another summary of what the evidence is. There's a problem with that because not only does that happen, but in the notice of intent to deny, there's a complete incident that never happened. Now, the district court says, well, they retracted it. That's what makes the agency work because they're being thoughtful and self-critical. Well, if you only admit you're wrong when you're caught, you're not exactly being thoughtful and self-critical. And this is a contest of credibility. And the district court says, they didn't lie about what they said they had done. How do we know that? I mean, there's a glaring inclusion of something that never happened in the notice of intent to deny. It's the same author who says, you know what, I have a summary of another event that actually happened. Yeah, I take that back, but the other one, yeah, just trust me. Okay. It boils down to credibility. And in these cases, you get the record and then you decide, am I going to depose people? Okay. Would you like to reserve the remainder of your time? I will reserve the remaining of my time. Thank you very much, Mr. Mwanga. We'll now move Ms. Kuchins to you. Good morning, your honors, and may it please the court. Olga Kuchins for the government, the appellees in this case. Your honors, Ms. Smith's allegations and the agency decisions she attached to the complaint show that she's not entitled to relief as a matter of law. The agencies drew a rational conclusion for their denial of her petition based on significant evidence of Ms. Smith's ongoing close relationship and cohabitation with her ex-husband despite their and four months after Smith's marriage and Mrs. Smith's pattern of misrepresenting the nature of that relationship with her ex-husband to immigration officials as recently as her 2015 USCIS interview on the petition. Because Ms. Smith simply wants a court to reach her desired conclusion by reweighing the credibility evidence, which black letter law prohibits, the district court properly dismissed the complaint. So can you help me out on the procedural posture here? Yes, of course, your honor. I'm still trying to figure out why we don't have, in essence, a standard complete administrative record. Yes, your honor, we don't have a complete administrative record because a plaintiff here herself attached more than enough evidence of what was before the agency, including the agency decision. Is there something else? Yes, she also attached her BIA brief, her declarations. Sorry, no. Is there something material that we don't have? So, yes, you do not have the statement from the 2002 Atlanta airport encounter. However, under the regulations, Ms. Smith is not required to be provided that statement because under the regulations and in accordance with this court's precedent, the only requirement is that she's given a notice of the derogatory information and an opportunity to rebut, which here she did. She, in fact, submits to the complaint the affidavits she submitted to the agency in rebuttal of the evidence that USCIS uncovered. And so here we do have the administrative record. It's correct that most of these APA immigration cases are decided on the full record, but here Ms. Smith herself attached more than enough evidence to make a determination for this court that her claims simply fail as a matter of law. And so we ask that this court affirm the district court's decision for three reasons. First, the agency's decisions comply with the APA because the agency's expressly considered the all-record evidence before them and reasonably explained and supported their conclusion for the denial of Ms. Smith's visa petition. Second, USCIS did not violate its disclosure regulations because the pre-denial summary of the derogatory information complied federal law and this court's precedent. And finally, Ms. Smith identified no infringement on a fundamental liberty interest and was provided all process she was constitutionally due by agency compliance with its regulations. I welcome the panel's questions. If I understand your position correctly, some of the most critical evidence supporting the agency determination was this interview at the Atlanta airport in 2002. That's incorrect, your honor. So the agency looked at all the evidence before it and that evidence was just a piece of all the other evidence the agency had in front of it, which was the fact that she and her ex-husband had a joint checking account post-divorce. The fact that she and her husband shared three residences and her ex-husband actually purchased one of the residences for Ms. Smith. The fact that in 2012, Ms. Smith, her husband, and their son signed a lease to share an apartment together in Milwaukee just four months before the Smith marriage and that an immigration officer observed in 2014, four months after the marriage, that Ms. Smith's name was on this Milwaukee apartment mailbox along with her husband and their son. Additionally, they also considered the fact that Ms. Smith provided false and misleading statements to immigration officials on two occasions. One was the Atlanta airport where the agency alleges that Ms. Smith and her ex-husband presented themselves as a married couple and another incident was during Ms. Smith's 2015 interview on the same petition where she denied that she ever traveled with her ex-husband where obviously they did travel. She admits so in her affidavit. She says that yes, they traveled in 2002. They were inspected. They were held in a room together with her ex-husband. They were sent back. So the agency not only considered the 2002 incident, the report that is referenced, and the summary from the ex-husband is not the only evidence. I didn't try to suggest it was the only one, but it is a rather prominent example undermining her credibility, correct? My apologies, at least in my experience, that we're reviewing an administrative agency's decision without having access to evidence that the agency relied upon. But we do have the evidence and in the NOID, the NOID, could you use a real word please? Oh, I'm so sorry. The notice of intent to deny the petition, which is typically issued prior to the actual denial, the NOID provided three sentences of what had occurred at the 2002 airport. Well, we also know that the notice of intent to deny had some incorrect information in it, right? That is correct. Okay. So I guess I'm still struggling with the idea that we're supposed to decide this without access to a full administrative record. I understand your concern, Your Honor. And is this going to become common? So this is the posture of this case. We are here on an MTD. We're looking at the pleadings. We're looking at whether Ms. Smith has alleged a plausible claim for release. Here we have to look at her allegations. She alleges that the agencies explicitly says that not mentioning evidence is not the same as not considering it. Next, Ms. Smith says there's no valid rationale and the decisions are unexplained. And again, I'm sorry. There's a line of reasoning in the agency's decision here that concerns me. And it seems to be that, in essence, I'll spin it a little differently than you have, that an amicable relationship between a mother and a father who have divorced, but who are still co-parenting a child, weighs against finding that a new marriage for one of them is a marriage in good faith. So help me deal with that. Yes, Your Honor, this is not the agency here. They did not hold the relationship itself as the only reason for why they determined that here Ms. Smith simply didn't meet her burden of proof to show that her marriage to Mr. Smith was bona fide, because it was undercut by all this evidence that I have previously listed. A lot of that, though, looks like just an amicable, cooperative, co-parenting relationship. What's not covered by that? So what's not covered by that is the credibility, the fact that they had a joint checking account after their divorce, the fact that they purchased a house that Mr. Francisco Hernandez-Riquez, the ex-husband, purchased a house for Mrs. Smith, and the fact that her name appeared on the mailbox just four months after the death of Mr. Smith, and that she signed a lease agreement to share an apartment four months before she married Mr. Smith. So I think all of that in based on the fact that Ms. Smith does not deny what was before the agency. She only denies the manner in which she and her ex-husband presented themselves, and she also denies that they only shared one residence in Wauwatosa instead of one. But aside from that, we don't have disputed facts here. All the facts that the agencies had are before you, Your Honors. And so I see my time is almost up. For this reason, again, in some, Ms. Smith's allegations and the agency decisions she herself attached to the complaint show that her claims are defeated as a matter of law. She simply wants a court to reweigh her evidence, which black letter law prohibits. For these reasons, Your Honors, this court should affirm the district court's decision. Thank you. Very good. Thank you, Ms. Kuchins. We'll now move Mr. Mwangi back to you for rebuttal argument. Thank you, Your Honor. Regarding the mailbox, you know, name on the mailbox and the lease, I don't know where the agency gets how much time you have to spend courting someone to marry them. She signed the lease August 10th. Mr. Hernandez Rico swears she moved out October 6th to go live with Mr. Smith at 500 Lewis. Yes, the name is on the mailbox. Incidentally, yesterday I was at the Empire Building in Milwaukee where I used to have an office until the end of February. My name is still in the directory. I don't know why, but it's there. So name on the mailbox. If you look at cases like Obolu Mwangi, for example, the investigation, they're talking to neighbors, HR manager, and other people. They actually investigate and talk to people. Here, mailbox, lease, that's it. Now, certified administrative records are certified because the court knows that it has everything. Yes, she attached affidavits. She attached what she saw, but sure enough, she didn't attach the notice of intent to deny. That was introduced with the brief as Exhibit A before the district court of the defendant's brief. So yeah, certified administrative records matter because they tell you you have the whole picture. Thank you, Mr. Mwangi. Thank you, Ms. Coochins. The case will be taken under advice. Case number